RECEIVED

JUL 2 1 2006

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| IN THE MATTER OF THE COMPLAINT OF CARDINAL SERVICES, INC. AS OWNERS OF L/B W. LOPEZ, OFFICIAL NO. 1060683 FOR EXONERATION FROM OR LIMITATION OF LIABILITY | CIVIL ACTION NO. 00-1909 C/W 00-1910 <br><br> JUDGE DOHERTY <br><br> MAGISTRATE JUDGE METHVIN |

## MEMORANDUM RULING

Pending before this Court is a Motion for Disqualification filed on behalf of Clifton Lewis, George Declouette, and Reginald Bill. While this Court originally ordered oral argument on this motion, it has now concluded that further oral argument from counsel is not necessary in light of the briefing which has been filed. As such, oral argument is hereby CANCELLED.

Professing grave concern for the quality of Mr. Breaud's anticipated advice to his client during the post-trial and appeal phases of this litigation, the claimants seek disqualification of Alan Breaud and his firm, Breaud & Meyers, from representing defendant, Omega Protein, Inc. in this matter. The basis for this motion is Mr. Breaud's testimony, several years ago, in an evidentiary hearing concerning the enforceability of settlement agreements executed by the movants. The claimants have not provided an explanation for the three-and-one-half year delay in presenting these concerns to the Court. For the following reasons, the motion will be denied.

Shortly after the vessel incident during which the three movants claim to have been injured, two of them (Messrs. Lewis and Bill) signed settlement agreements with Omega Protein, Inc. Omega was represented by Allen Breaud in the process by which those settlement agreements were reached. Several years later, Omega sought to enforce those settlement agreements by asserting the

defense of accord and satisfaction in response to the claims which had been filed by Messrs. Lewis and Bill. During the evidentiary hearing held in December, 2002, Mr. Breaud testified concerning his involvement in the process of obtaining settlement agreements from the claimants. Based upon the testimony of Mr. Breaud and the claimants, as well as evidence submitted into the record, this Court found that the settlements were not enforceable and, therefore, denied Omega the right to assert the defense of accord and satisfaction. Though they refrained from challenging Mr. Breaud's ability to represent Omega's interests prior to, and during, the evidentiary hearing, the claimants now issue such a challenge.

Disqualification cases are governed by state and national ethical standards adopted by the Court. Federal Deposit Insurance Corporation v. United States Fire Insurance Company, 50 F.3d 1304, 1311-12 (5th Cir. 1995). Four ethical canons should be consulted with regard to disqualification issues: (a) local rules; (b) model rules of professional conduct; (3) state rules, and (4) the model code. Id. at 1312. The movants have identified two rules which they allege Mr. Breaud and his firm are violating.

The first rule identified by the claimants is Rule 3.7 of the Louisiana Rules of Professional Conduct (as well as Model Rule 3.7), which prohibits a lawyer from acting both as an advocate and as a witness in the same trial.

    (a)    A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:

        (1)    the testimony relates to an uncontested issue;

        (2)    the testimony relates to the nature and value of legal services rendered in the case; or

        (3)    disqualification of the lawyer would work substantial hardship on the client.

> (b) A lawyer may act as an advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9.

La. St. Bar. Art. 16, RPC Rule 3.7, La. Rev. Stat. foll. 37:222.

As to this alleged violation, the claimants have presented no evidence to suggest that Mr. Breaud will testify at trial (or at any other hearing) henceforth in this case. Moreover, in response to the motion, Omega Protein has affirmatively asserted that it has no intention of presenting testimony by Mr. Breaud at trial, or at any point in future. As such, there is no basis in the record for finding any possibility for a trial-related violation of Rule 3.7 and, therefore, the plain language of the prohibition contained in rule 3.7 is not met here.

Rather than a concern about trial, the movants profess to be concerned about Mr. Breaud's earlier testimony. Rule 3.7 clearly uses the future tense in describing the prohibited actions: attorneys are prohibited from representing a client in an action in which they are "likely to be a necessary witness," not in which they *have been* a necessary witness. While a legislative body's choice of tense normally is of little significance in interpreting a rule, the importance in this particular context is undeniable due to the opportunities for mischief presented when a party uses Rule 3.7 to seek disqualification of his opponent's attorney.

> Where an attorney's testimony may prejudice only his own client, the opposing party should have no say in whether or not the attorney participates in the litigation as both advocate and witness. It is generally proper for an opposing party to bring conflict of interest matters to the attention of the court. Such an objection should be viewed with caution, however, for it can be misused as a technique of harassment.

Federal Deposit Insurance Corporation., 50 F.3d at 1315 (citations omitted). The risk of misuse of a disqualification motion referenced by the Fifth Circuit is clearly higher in the context where a party did not object to the testimony of his opponent's lawyer at a preliminary evidentiary hearing and

-3-

seeks to use that testimony, over three years later, as a basis of disqualifying the attorney from appearing in the case. In the absence of any basis for believing that the Louisiana State Bar Association, the Louisiana Supreme Court, the American Bar Association, the Fifth Circuit, or any other authoritative source has intended to have the Rule 3.7 prohibition applied retroactively, as the movants seek to do here. This Court will not ignore the specific, future-looking language used by the Louisiana State Bar Association in order to reach out and impose disqualification upon opposing counsel for uncontested acts taken three years prior.

Even if the plain language of the statute were to apply here, however, the movants have not addressed, in any way, the component of Rule 3.7 precluding disqualification if it would impose a substantial hardship upon the client. Omega Protein has declared that disqualification would cause it to endure substantial hardship at this point in the litigation – merely six months prior to trial in a case that has been ongoing for six years. The movants have not submitted any evidence or argument challenging this claim on the part of Omega Protein. In the absence of any basis for disputing Omega Protein's claim of substantial hardship, this Court finds that, even if Rule 3.7 were to be applied under the facts of this case, the hardship which necessarily would result to Omega Protein from the disqualification of Mr. Breaud at this point in the case would not outweigh any assumed impropriety from his testimony in the earlier evidentiary hearing. For these reasons, this Court finds that the movants have failed to carry their burden of proof that Rule 3.7 requires the disqualification of Mr. Breaud from this litigation.

The second rule cited by the claimants is "Model Rule 1.7" (which limits an attorney's ability

represent a client with which he has a conflict of interest).[1] This Court has searched the current versions of the Local Rules, the Louisiana Rules of Professional Conduct, the Model Code, and the Model Rules and has not found the "Model Rule 1.7" which was quoted by the claimants in their brief. It appears that the movants have quoted the version of Model Rule 1.7 included by the Fifth Circuit in Federal Deposit Insurance Corporation, 50 F.3d at 1310, n.6.; however, the current version of Model Rule 1.7 is substantially different than the 1992 version quoted by the Fifth Circuit. As such, the version quoted by the claimants is not applicable. Because the claimants have not supported their argument for applying the quoted version of Rule 1.7 in this case, the Rule cannot be used as a basis for the disqualification of Mr. Breaud or his firm.

Even were the Model Rule 1.7, as quoted by the claimants, applicable here, however, it would not be applied to require the disqualification of Mr. Breaud and his firm, as the movants request. The Fifth Circuit has provided clear guidance as to the need to ensure that any disqualification is linked to an actual, real conflict rather than an imaginary one. In Federal Deposit Insurance Company, the FDIC's lawyer was delinquent in producing certain documents (on behalf of Irving Savings, a banking institution which later went into receivership with the FDIC); her failure to comply with the requests of United States Fire Insurance Company's requests then created a risk that the FDIC might be deemed, at some point, to have been in bad faith in its dispute with U.S. Fire. Thus, the lawyer's actions had the potential to cost the FDIC a tangible benefit and, moreover, she was going to have to testify at trial. In circumstances substantially similar to those presented here,

---

[1] "Model Rule 1.7" as it is quoted in the movants' brief, reads: "A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's own responsibilities to another client or to a third person, or by the lawyer's own interests, unless: (a) the lawyer reasonably believes the representation will not be adversely affected; and (2) the client consents after consultation . . . ."

the Fifth Circuit rejected the argument that a conflict of interest existed between the FDIC and its lawyer (and her firm) sufficient to justify disqualification:

> U.S. Fire contends that the FDIC may have a claim agaisnt Kenney and her firm if the FDIC's claim against U.S. Fire is ultimately defeated on the basis of Kenney's actions. Consequently, it is possible that, sometime in the future, the interests of Kenney and the FDIC might diverge. U.S. Fire contends that this potential conflict of interest requires the disqualification of Kenney and the imputed disqualification of her entire firm.
>
> We find that the remote possibility that Kenney and the FDIC may eventually find themselves at odds is much too tenuous a thread to support the burdensome sanction of law firm disqualification. . . . Notwithstanding one hypothetical scenario wherein the interests of Kenney and the FDIC might be charadcterized as tangentially conflicting, Kenney's interests are otherwise consistent with those of her client. Just as it is in the interest of U.S. Fire to show comparative bad faith, it is in the interest of both Kenney and the FDIC to disprove it.

50 F.3d at 1314.

Notwithstanding the warning and guidance provided by the Fifth Circuit, the claimants here have invoked the same tenuous theoretical conflict as the basis for their motion. Declaring their belief that Mr. Breaud's intentions are "no doubt honorable," the claimants state that Mr. Breaud's interests (and those of his firm) in this action (with regard to whether or not a valid settlement was reached between Omega and the claimants) are in conflict with those of his client, Omega Protein. Specifically, the claimants seem to be under the impression that counsel's continued belief in the sufficiency of those settlements – notwithstanding this Court's ruling to the contrary – might drive him to raise the issue again, either before this Court or on appeal, and that such a move might, in some manner, be contrary to his client's interests.

Unfortunately, the claimants have not identified how, precisely, such a move might be contrary to Mr. Breaud's client's interests. It would seem that, if Mr. Breaud is able to persuade a

court to enforce the settlement agreement, such a conclusion would substantially benefit Omega's interests. While this Court does not anticipate that either Mr. Breaud or Omega would be successful in such an effort, the prospect clearly does not reveal any conflict of interest between Mr. Breaud and his client. As to both Mr. Breaud and his client, the decision to push the issue any farther without sufficient justification would risk being perceived as wasting the Court's resources, as well as those of all parties, an outcome which would not benefit either Mr. Breaud *or* his client. On the other hand, should Mr. Breaud convince his client to revisit the issue and be able to convince either this Court *or* the Fifth Circuit to reinstate and give effect to the defense of accord and satisfaction, then he would be vindicated personally and his client would benefit substantially from the reinstatement of the earlier settlement agreements. In either event, the same risks and benefits inhere with regard to both Mr. Breaud and Omega Protein.

Thus, on the theory identified by the movants, this Court is at a loss to identify any conflict between Mr. Breaud's interest and those of his client. On the other hand, in the event that the movants intend to suggest the same potential, imagined conflict of interest as was invoked in <u>Federal Deposit Insurance Company</u>, that theory would be overruled on the same bases as those the Fifth Circuit used in rejecting the theory in that case. For these reasons, this Court finds that the movants have not carried their burden of proving any violation of any applicable version of Model Rule 1.7, nor even of the inapplicable version quoted in their brief.

For the foregoing reasons, the Motion for Disqualification will be DENIED.

THUS DONE AND SIGNED in Chambers, Lafayette, Louisiana, this 21 day of July, 2006.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE

COPY SENT
DATE: 7-21-06
BY: OA
TO: via fax: Tillery
Coudier
Broad
Meyers
Boaden
Hall