UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| IN THE MATTER OF THE COMPLAINT OF CARDINAL SERVICES, INC. AS OWNERS OF L/B W. LOPEZ, OFFICIAL NO. 1060683 FOR EXONERATION FROM OR LIMITATION OF LIABILITY | CONSOLIDATED CASE CIVIL ACTION NO.  00-1909 JUDGE DOHERTY MAGISTRATE JUDGE METHVIN |

*REPORT AND RECOMMENDATION*

On March 21, 2007, following a four-day bench trial, U. S. District Judge Rebecca F. Doherty found in favor of Jones Act claimants Clifton Lewis and George Declouette.[1]  The court concluded, among other things, that Omega Protein, Inc. had unreasonably refused to pay maintenance and cure beginning July 15, 2004.  The court granted claimants' request for reasonable attorney's fees, but limited the award to fees incurred in connection with the maintenance claim only, noting that claimants had waived fees as to cure during a settlement conference conducted by Magistrate Judge Hill on January 11, 2007.[2]

The court referred the issue of reasonable attorneys' fees to the undersigned for report and recommendation.  Claimants have filed four briefs supporting their request for fees.[3]  Omega has filed three responses.[4]

---

[1] The instant suit comprises two limitation of liability suits which were consolidated.  On March 9, 2001, claimant Clifton Lewis filed a Claim and Answer in C.A.# 00-1909, alleging that he was injured while employed as a seaman aboard the M/V RACOON POINT, owned and operated by Omega Protein, Inc., when the M/V RACOON POINT was struck by the L/B W. LOPEZ, owned and operated by Cardinal Services [Rec. Doc. 14].  On May 11, 2001, the court consolidated C.A.# 00-1909 with C.A.# 00-1910, a related limitation of liability lawsuit [Rec. Doc. 24]  On February 20, 2002, claimant George Declouette filed a Claim and Answer in the related case, alleging that he was injured in the same incident [Rec. Doc. 64].

[2] Rec. Doc. 302.

[3] Rec. Docs. 304, 309, 313 & 318.

[4] Rec. Docs. 305, 316 & 319.

2

*Fee Requested*

Claimants seek $11,450.00 for 56.50 hours of work performed by attorney Jim S. Hall and 0.75 hours of work performed by a paralegal, all at the rate of $200 per hour.[5] Mr. Hall has submitted an affidavit along with two exhibits.

*Guidelines for Attorneys' Fees Awards*

The Fifth Circuit employs the lodestar method in calculating reasonable attorneys' fee awards, which involves multiplying the reasonable hours expended by a reasonable hourly rate. Hensley v. Eckerhart, 461 U.S. 424, 434 (1983). The calculation of reasonable hours requires a determination of whether the total number of hours claimed were reasonable and whether specific hours claimed were reasonably expended. League of United Latin American Citizens #4552 (LULAC) v. Rosco Independent Sch. Dist., 119 F. 3d 1228, 1232 (1997). A reasonable hourly billing rate is based on the "prevailing market rates in the relevant community." Blum v. Stenson, 465 U.S. 886, 895 (1984). Reasonable costs are costs which would ordinarily be charged to a fee-paying client. Associated Builders and Contractors of Louisiana, Inc. v. Orleans Parish School Board, 919 F.2d 374, 379 (5th Cir. 1990).

The starting point of the "lodestar" approach is the number of attorney hours reasonably expended on litigation multiplied by a reasonable hourly rate. Id. at 192; Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). The attorney's usual non-contingent hourly rate or the prevailing market rate charged in the relevant community for similar

---

[5] Mr. Hall originally requested $350 per hour, but he reduced his hourly fee request to $200 per hour based upon previous awards in this court. [Rec. Doc. 313, Memorandum, pp. 3-4].

3

legal services are measures typically used as a first approximation of the reasonable hourly rate. Brown, 917 F.2d at 192.

Once determined, the product of this calculation, or the "lodestar," may be adjusted upward or downward based on the court's consideration of the circumstances surrounding the case. Id. This process is guided by the twelve factors set forth by the Fifth Circuit in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974). Mid-Continent Casualty Company v. Chevron Pipe Line Company, 205 F.3d 222, 232 (5th Cir. 2000). The twelve Johnson factors include: (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorneys due to this case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of counsel; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. Johnson, 488 F.2d at 717-19. The Supreme Court has limited greatly the use of the second, third, eighth, and ninth factors, and the Fifth Circuit has held that "[e]nhancements based upon these factors are only appropriate in rare cases supported by specific evidence in the record and detailed findings by the courts." Walker v. U. S. Department of Housing and Urban Development, 99 F.3d 761, 771-72 (5th Cir. 1996); Alberti v. Klevenhagen, 896 F.2d 927, 936 (5th Cir.), *modified on other grounds*, 903 F.2d 352 (5th Cir. 1990), citing Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 565, 106 S.Ct. 3088, 3098, 92 L.Ed.2d 439 (1986).

4

A fee applicant bears the burden of documenting and supporting the reasonableness of all time expenditures for which compensation is sought. Hensley v. Eckerhart, 461 U.S. 424, 437 (1983). Applying the Hensley rationale, the Fifth Circuit has held that the burden of proving the reasonableness of the number of hours in an application "is on the fee applicant and not on the opposing party to prove their unreasonableness." Leroy v. City of Houston, 831 F.2d 576, 586 (5th Cir. 1987).

Accordingly, fee applicants are "to produce contemporaneous billing records or other sufficient documentation so that the district court can fulfill its duty to examine the application for compensable hours." Bode v. United States, 919 F.2d 1044, 1047 (5th Cir. 1990). Specifically, billing records produced to a court for purposes of calculating an award of attorneys' fee are to contain the task that was performed, as well as the amount of time spent on each task. The undersigned notes that the Fifth Circuit frowns on consolidating individual items into one large block of time for each day. Conner v. Mid South Insurance Agency, Inc., 943 F.Supp. 663, 666 (W.D. La 1996) (Little, J.), citing Leroy, 906 F.2d at 1080.

Courts may exclude hours that are insufficiently documented and should not award attorney's fees unless the prevailing party presents sufficiently detailed records that the time expended and the need for services are clearly established. Bode v. United States, 919 F.2d 1044, 1047 (5th Cir. 1991). The remedy for failure to submit bills containing complete details is not preclusion, but rather, reduction of the fees and costs claimed. In Hensley, *supra*, the United States Supreme Court stated that "[w]here the documentation of hours is inadequate, the district court may reduce the award accordingly." 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40, 51; Von Clark v. Butler, 916 F.2d 255, 259 (5th Cir. 1990); Leroy, 906 F.2d at 1068.

5

*Analysis*

As noted above, claimants seek $11,450.00 for 56.50 hours of work performed by attorney Jim S. Hall and 0.75 hours of work performed by a paralegal, all at the rate of $200 per hour.

Mr. Hall points out in his affidavit that he was retained on a contingency fee basis, and therefore did not maintain contemporaneous billing records. However, he created two exhibits post-trial based upon documents in his file and court records. The first exhibit shows a time line of tasks performed in connection with this case and the amount of time spent on each task, while the second exhibit is a list of court record documents prepared by Mr. Hall and appearances he made on behalf of the claimants in connection with this lawsuit, as well as the time spent on each document and/or court appearance.

In several briefs, Omega challenges the sufficiency of documentation provided by claimants, arguing that Omega has consistently sought fees for tasks performed in connection with issues surrounding cure and for tasks performed at times when maintenance was not due.

*Reasonable Hours Expended*

Omega's chief complaint is that claimants have included entries for work performed by Mr. Hall on the cure issue, despite the fact that the district judge concluded that both claimants waived an attorneys' fee award with respect to cure.[6]

It should be noted as a practical matter that it would be impossible to surgically sever work performed on the cure claim from that performed on the maintenance claim. For instance,

---

[6] Omega lists the following entries documenting letters between counsel that Omega contends relate directly to cure and for which no mention of maintenance is made: Exhibits 7.8, 7.22, 7.23, 7.24, 7.25, 7.30, 7.31, 7.33, 7.34, 7.35, 7.45, 7.46, 7.53, 7.54, 7.55, 7.56, 7.57, and 7.63.

6

counsel received and sent a number of letters addressed to the claimants' need for surgery. Such letters concern not only cure, but also the issue of whether the claimants had reached maximum medical improvement, and, therefore, whether they were still entitled to maintenance.

After considering the arguments of counsel, the undersigned agrees that the assessment of the claimants' ongoing medical conditions – including their need for surgery – affected their continuing entitlement to maintenance payments. Thus, to the extent that the letters address medical records indicating that the claimants had not reached maximum medical improvement and were still entitled to maintenance, it is appropriate for these letters to be included for consideration in the calculation of the attorneys' fee award.

Similarly, Omega's contention that letters prepared by paralegals should not be included in the fee award calculation is unpersuasive. Paralegal fees are recoverable as a component part of a prevailing party's attorneys' fees if the "prevailing practice in a given community [is] to bill paralegal [or legal assistant] time separately at market rates ..." Missouri v. Jenkins, 491 U.S. 274, 287, 109 S.Ct. 2463, 2471 (1989); League of United Latin American Citizens, 119 F.3d 1228, 1235 (5th Cir. 1997); 20 Am.Jur.2d §61 (May 2003).

It is the prevailing practice in the legal community of the Lafayette-Opelousas Division of the Western District of Louisiana to bill paralegal fees separately at market rates. Exhibits 7.37, 7.57, and 7.65 in Amended Exhibit "C" show that the paralegal expended only 0.75 hours on the case, and the work does not appear to be unreasonable, duplicative, or excessive to the need. Accordingly, the amount of time expended will not be reduced or excluded.

No hourly rate is provided for the paralegal. In fact, it appears that the 0.75 hours requested were simply included in the total hours for Mr. Hall, and a rate of $200 was applied to

7

all hours. Clearly, this is not appropriate for paralegal work. The undersigned concludes that and an hourly rate of $65.00 for the paralegal work is reasonable. *See*, e.g., <u>Conner v. Mid South Insurance Agency, Inc.</u>, 943 F.Supp. 663, 667 (W.D. La 1996) (approving an hourly rate of $40 for paralegals in an ERISA action); <u>Yousuf v. UHS of De La Ronde, Inc.</u>, 110 F.Supp.2d 482, 491 (E.D.La. 1999) (approving an hourly rate of $55 for paralegals in a Title VII action).

Omega contends that no award should be given for work performed by attorneys prior to the time that Mr. Hall was retained in the case. This argument is well-taken. Claimants have not submitted an affidavit of any counsel other than Mr. Hall. Mr. Hall includes these fees in his affidavit, but he did not do the work. Accordingly, these fees, which total only 2.5 hours, will not be awarded. This includes exhibit 7.51 (0.5 hours) in Amended Exhibit "C" and Documents No. 9 (1 hour) and No. 14 (1 hour) in Amended Exhibit "D."

Omega contends that no fee should be awarded for the preparation of claimant George Declouette's motion for leave to file a late claim and answer on November 9, 2001 (Document No. 54 in Amended Exhibit "D") because of the fact that no maintenance was due at this time. This argument is without merit. The record shows that the filing of this motion was Mr. Declouette's first appearance in the lawsuit in which he urged his claims, and that but for the filing of this pleading, Mr. Declouette would have no claim at all. Similarly, Omega's claim that no fee should be awarded for the filing of an answer and claim on behalf of Mr. Declouette on February 20, 2002 (Document No. 64 in Amended Exhibit "D") is also without merit. Omega contends that this pleading pertains to Declouette's claim against Cardinal Services and not Omega. However, Decoulette argues that this pleading relates to not only the Jones Act and

8

general maritime law claims, but also the claims for maintenance and cure. As such, it is appropriate to include this document in considering the fee award.

Omega objects that the twelve hours billed for attendance at the pre-trial conference (six hours billed on behalf of each claimant) is excessive. Omega points out that most of the conference was spent discussing issues other than the maintenance issue, which is the only issue for which attorneys' fees have been awarded. These arguments are well-taken, and the court will reduce the total to six hours for attendance at the pre-trial conference.

Finally, the parties dispute whether Omega must pay attorneys' fees to claimants for activities undertaken on their behalf prior to July 15, 2004, the date that the district judge rejected Omega's defense of receipt and release but Omega nevertheless failed to commence maintenance payments.[7] While the minutes of the hearing in which the district judge awarded attorneys' fees are silent as to this issue, both the claimants and Omega argue that the district judge intended to rule in their favor. Omega argues that, so long as their defense of receipt and release was viable, they should not be liable for attorneys' fees before July 15, 2004. Claimants, however, argue that the fact that Omega continued to fail to pay maintenance following the district judge's rejection of their defense supports an argument that Omega's reliance on the defense of receipt and release was simply a "smokescreen." Claimants argue that the district judge took note of this fact at the March 21, 2007 hearing, and contend that this militates in favor of a finding that fees for activities prior to July 15, 2004 should be considered in the award.

Like the parties, the undersigned does not have a transcript of the minutes of the March 21, 2007 hearing. Nevertheless, considering the arguments of the parties, the undersigned

---

[7] See Rec. Doc. 165, Minutes of Hearing, dated July 15, 2004.

9

concludes that activities undertaken by claimants' counsel prior to July 15, 2004 should be included in the court's consideration of a reasonable attorneys' fee award.

Considering the foregoing, and after deducting the number of hours discussed herein, the undersigned concludes that a total of 48 hours of attorney time and .75 hours of paralegal time should be included in the attorneys' fee calculation.

### *Hourly Rate*

Claimants seek attorneys fees at the rate of $200.00 per hour. Mr. Hall is a solo practitioner with fifteen years of litigation experience. Mr. Hall originally requested $350 per hour, noting that he was "an experienced trial attorney practicing in federal court regularly."[8] In a later memorandum, Mr. Hall accurately noted that this matter "was not simply a Jones Act claim for negligence, but involved limitation proceedings filed by two petitioners and, in addition, involved a defense to the maintenance issue of an alleged valid receipt and release signed by claimant Clifton Lewis."[9] Mr. Hall later reduced his hourly fee request to $200 per hour based upon previous awards in this court.[10]

Attorneys' fees are to be calculated at the prevailing market rates in the relevant community for similar services by attorneys of reasonably comparable skills, experience, and reputation. Tasch, Inc. v. Unified Staffing & Associates, Inc., 2004 WL 1857640, *3 (E.D.La. 2004), citing Blum v. Stenson, 465 U.S. 886, 895, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). "For the purposes of determining lodestar for attorney fees, relevant 'community' is one in which [the]

---

[8] Rec. Doc. 304-2, p.2.

[9] Rec. Doc. 313, "Attachment A," p. 2.

[10] Rec. Doc. 313, Memorandum, pp. 3-4.

10

district court sits regardless of [the] fact that much of the work must be performed away from district court's community or that high-priced attorneys come into jurisdictions with much lower market rates ···" Tasch, 2004 WL 1857640, *3, citing Donnell v. United States, 240 F.2d 682 (D.C.Cir.1982).  As the court noted in Tasch:

> The applicant bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates. *See NAACP v. City of Evergreen,* 812 F.2d 1332, 1338 (11th Cir.1987). Satisfactory evidence of the reasonableness of the rate, at a minimum, is more than the affidavit of the attorney performing the work. *Norman v. Housing Authority of City of Montgomery,* 836 F.2d 1292, 1299 (11th Cir.1988) (citing *Blum,* 465 U.S. at 896 n. 11)). It must also speak to rates actually billed and paid in similar lawsuits. Thus, testimony that a given fee is reasonable is not satisfactory evidence of market rates. *See Hensley,* 461 U.S. at 439 n. 15.

2004 WL 1857640 *3.

The prevailing market rate in Lafayette, Louisiana fluctuates depending on the type of case.  In 2001, this Court awarded fees of $150.00 per hour for partners and $100.00 per hour for associates in a shareholder's derivative action (Vidrine v. American Securities Bancshares of Ville Platte, Inc., Civil Action No. 98-1939, W.D. La. Nov. 8, 2001).  Higher hourly rates have been awarded in cases involving more complex litigation.  In Brown, et al. v. Sea Mar Management, L.L.C., et al., Civil Action No. 04-1486 (W.D. La. 2006), this Court approved an hourly rate of $175.00 for a partner in lawsuit involving a claim for contractual indemnity under OCSLA.  In Edmond v. Oxlite, Inc., et al., Civil Action No. 01-2594 (W.D. La. 2005), this Court approved an hourly rate of $195 for a partner with twenty-eight years of experience who was a past Chair of the Louisiana State Bar Association Section of Labor and Employment Law, and $125.00 for associate in Title II litigation.  In 1998, the Fifth Circuit approved hourly rates of

11

$175.00 for partners and $135.00 for associates in an antitrust suit litigated in the Western District of Louisiana. Strong v. BellSouth Communications, 137 F.3d 844, 850 (5th Cir. 1998)

Based on the rates awarded by the courts in this district, rates awarded by the Fifth Circuit, and the experience of counsel, the undersigned concludes that $185.00 is a reasonable hourly rate for Mr. Hall in this case.

*Conclusion*

Considering the foregoing, the undersigned **RECOMMENDS** that claimants be awarded the amount of $8,928.75 in fees, which consists of attorneys' fees in the amount of $8,880.00 (48 hours at an hourly rate of $185.00) and paralegal fees in the amount of $48.75 (.75 hours at an hourly rate of $65.00).

The recommendation reflects the following adjustments to claimants' request:

1. From Mr. Hall's total request of 56.50 hours, a deduction of 8.5 hours as follows, leaving an award of 48 hours:

    a. six (6) hours for attendance at the pretrial conference; and
    b. two and a half (2.5) hours for work performed by other attorneys for whom no affidavit was presented.

2. An hourly fee of $185 per hour for Mr. Hall's work, adjusted downward from $200 per hour.

3. An hourly fee of $65 for paralegal work, adjusted downward from $200 per hour, with no change in the hours requested (0.75).

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may

12

respond to another party's objections within ten (10) days after being served with a copy of any objections or responses to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of receipt, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  See <u>Douglass v. United Services Automobile Association</u>, 79 F.3d 1415 (5th Cir. 1996).**

Signed at Lafayette, Louisiana, on June 25, 2007.

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)